## Case No. 5,036.

### The FRANCIS.

[2 Gall. 391.] [1]

Circuit Court, D. Rhode Island. June Term, 1815.

Mr. Searle, for claimants.
Burrill & Robbins, for captors.

STORY, Circuit Justice. This is a mere question of proprietary interest. The shipment was made by Mr. Bowman Fleming of Glasgow, to his brother, Mr. John Fleming at New York. The packages are all marked with the initials BF, but neither the bill of lading, nor invoice, nor accompanying letter, express any account or risk. The natural conclusion would be, that the property belonged to the shipper. The claimants, who are merchants at Savannah, claim the shipment on their own account, and upon their urgent application, an order for further proof was made, and the original letters and documents respecting the shipment were required to be produced. They have had full warning of the extreme difficulty of their case, and ample time to remove it; and it must now be presumed, that every thing is before the court, which they could call in aid of their claim.

Considering the nature of the claim, the

[1] [Reported by John Gallison, Esq.]

evidence adduced is not so complete, as might have been reasonably expected. There are several omissions, which it is very difficult to account for, and a considerable degree of laxity in the statements of the affidavits of claim.

No specific orders are produced, to authorise the shipments; and the orders, contained in the letter of the 21st of December, 1811, would seem directly to negative it. It is a clear result of the decisions of the supreme court (The St. Jose Indiano, 1 Wheat. [14 U. S.] 208, and cases there referred to) that a shipment made without orders, or contrary to orders, is at the risk of the shipper during the voyage. The claimants attempt to support their case under the allegation, that the shipper had general discretionary orders to ship, what and when he pleased, and that there was a sort of general usage between him and them on the subject. It strikes me, that there is no sufficient evidence, to justify so broad an allegation. And if there were, in point of law, the shipment would remain at the risk of the shipper, unless at the time of the shipment, he, by some overt unequivocal act, designated or appropriated it to his correspondents. He cannot ship goods generally to a third person, and govern himself as events may turn up, either to claim the gain for himself, or to throw the loss on them. Until such appropriation, the property is not changed. It might, with as much propriety, be claimed as changed, when ordered from the manufacturers on the general account of the shipper, merely because he had a contingent intention of shipping it to his correspondents. And this also, as I apprehend, has been the doctrine asserted by the supreme court.

In the present case, there is not a scrip of paper on board pointing to an interest in the claimants. If really designed for them, it is inconceivable that no letter, ordering the trans-shipment to Savannah, was sent to the consignee. No original letters to Mr. John Fleming are produced; and although the parties, from being brothers, cannot but be presumed to have an intimate connexion (a connexion palpably admitted in all the letters of a confidential nature), there is not a line from Mr. Bowman Fleming to him, nor even an affidavit from Mr. John Fleming, to negative the presumption necessarily arising from the consignment. This gentleman has studiously withdrawn himself from all connexion with the cause, though from his residence at New York, it is difficult to conceive, why he should not have originally interposed a claim as consignee, if there had been the slightest pretence for a bona fide claim. It is impossible not to draw very unfavorable inferences from this sedulous omission of a necessary witness, who may be really deemed conductor operarum. I have a strong impression, corroborated by some of the letters, which are in the case, that if the confidential correspondence and articles of copartnership of the parties, were fully before the court, it would appear that Mr. Bowman Fleming was either a dormant partner, or a principal, in all the shipments made by him to the houses at Savannah and New York.

There is another important omission. In the letters produced, there is a perpetual reference to other letters previously written; and contemporaneous shipments are spoken of in the Fanny, and the Thomas Gibbons. These vessels were captured, and brought into the United States for adjudication, and all the letters were deposited in the prize court, or delivered to the parties. How has it happened, that not a single letter, sent by any vessel after the Francis sailed, has been produced? How has it happened, that not a copy of any paper, relative to the shipments in the Fanny or the Thomas Gibbons, has been adduced? Is it credible, that the shipment in the Francis should be stated in letters written in October, 1812, and not once alluded to in prior letters? Since there must have been letters received by the claimants, which they hold back from the court, it is not an unjust conclusion, that they would not, if shown, support the present claim.

In respect to the letters disclosed to the court, there is much to awaken jealousy. The letter of the 22d of October is doubtless genuine. But I am entirely satisfied, that it was written after a knowledge of the capture of the Francis. And I cannot but remark, that notwithstanding all these ships were captured, that circumstance is not once alluded to in the correspondence, at any time. Is it possible, that the shipper should never have expressed any solicitude on the subject? Must there not be other letters between the parties? The time elapsed after the arrival of the Francis was ample to give the knowledge of that fact in Glasgow on the 22d of October, and the letter of that date has, in the concluding paragraph, an intimation, which may be interpreted to allude to the protection of the interests, which the writer had in the shipments, made by him. The language of that letter is, in other respects, worthy of attention. The writer is very scrupulous in declaring his having made shipments, according to orders from the claimants, in the Fanny and the Francis, to his brother's address in New York. Yet, in a letter written only eight days before (on the 14th of October) there is not the slightest intimation of any shipment, except in the Thomas Gibbons. The same remark also applies to the letter of the 1st of January, 1813; and I will add, that although the originals were specially directed to be produced, a copy only of that letter is before the court. How can these omissions be reasonably accounted for, consistent with the verity of the present claim?

The letter, however, which is annexed to the invoice of the 16th of July, is that, upon which the claimants mainly rely, to support

their title; and if that letter be spurious, or not sufficiently authenticated to entitle it to credit, the court would be insensible to its own duty, if it did not reject it, and decree condemnation. That letter has not on it the slightest mark, to verify the time of its date, or of its receipt. It has neither post mark, nor ship-mark, nor mode of conveyance on it. The claimants themselves do not give any satisfactory account of it. They state, that it was received either personally, or by enclosure, from Mr. John Fleming, but do not declare at what time, or at what place it was so received. Neither is there offered any suppletory affidavit of Mr. John Fleming, to confirm the declaration, nor the original letter in which it was enclosed to him. All the other original letters from Mr. Bowman Fleming are in his own handwriting. In this letter, the signature only is his, and the body is filled up in another handwriting. The invoice, on the same paper, is asserted to be in the handwriting of his clerk; and on examination, it bears considerable resemblance to the original invoice. There is this remarkable circumstance, that in the original invoice found on board, no charges are added, which would be natural, if the goods belonged to the shipper, but in the present invoice, charges, and insurance and commissions are found. The words "Ship Francis, Capt. Boyer," on the direction of the original invoice, resemble the handwriting of Mr. Bowman Fleming, and incline me strongly to believe, that it passed through his hands. How then can we account for the omission of the charges, or of the words "the account and risk," which the new invoice of the 16th of July affects to supply?

There is another circumstance connected with this letter, which has great weight. In June, 1813, a petition was presented to the court for a remission of the forfeiture of this shipment under the act of 2d of January, 1813. In support of the verity of that petition, and of the proprietary interest, copies of the letters of the 14th and 22d of October, and of the 1st of January, were presented. The letter, which is now under consideration, was not even alluded to, much less was it presented, as the papers in this cause most distinctly show. This omission cannot be otherwise accounted for, than upon the supposition that no such letter was then in existence or in the possession of the claimants. It is incredible, that merchants in regular business should not be able to tell, when or where they receive important letters; and in this very case there is proof, that the claimants usually endorse letters received by themselves. If, as the claimants would lead us to suppose, this letter was written and sent about the 16th of July, it is somewhat singular that it should not have been filed with their claim, late as that was interposed, in October, 1812. That it never was produced until the present term, is not accounted for in any manner; and for aught that appears on it, it may have been a fabrication of but a very few months ago.

If the court should restore the property upon the footing of a letter so totally without authentication, it would voluntarily submit itself to every species of imposition. I have not the slightest doubt, that it was never written bona fide in Scotland. It would not, considering all the circumstances, be a harsh imputation to declare, that it was probably transmitted with the invoice, and in blank, to be filled up over the signature in this country, in such manner, as the friends of Mr. Bowman Fleming might deem advisable. If I had entertained any doubt, as to this transaction, I should have directed the papers and affidavits of the parties in the prize causes of the Fanny and the Thomas Gibbons to be invoked into this cause. And I should have been surprised, if some light would not have been reflected from those causes in aid of the opinion which I entertain on this subject. But as I am entirely satisfied, that the claim is utterly without satisfactory proof, I shall condemn the property as good prize to the captors.

In case of an appeal, I shall direct all the original papers to be delivered to the captors, upon their undertaking to deliver them to the supreme court, and leaving attested copies in the circuit court. It is impossible, without an inspection, to feel the full force of some portion of the difficulties of this cause.

Condemned.