WOOLSEY *v.* BAILEY & *a.*

The defendants requested the travelling agent for the plaintiff, who lived in New York, to send to the plaintiff an order for certain liquors, which was done, and they were sent on by the plaintiff, and received by the defendants. They were directed to " Bailey & Greeley," or to " B. & G., Nashville, N. H." The plaintiff had a license to sell liquors in New York, but not in New Hampshire. *Held,* that the sale and delivery were in New York, and that the price of the liquors could be recovered in this State.

ASSUMPSIT, to recover the price of one pipe of gin and one quarter pipe of brandy, amounting to the sum of $251,50, sold to the defendants in the summer of 1851.

It appeared that one Lewis Hanford was a travelling agent for the plaintiff to visit customers, to see what they wanted, to save them the trouble of sending to New York, (where the plaintiff lived,) if they should want anything, and to collect bills, &c. He also received orders and transmitted them to the plaintiff, for him to reject or fulfil as he should see fit, but he had no authority to sell. In the month of July, 1851, the defendants requested Hanford to forward to the plaintiff an order for the liquors in question, which he accordingly did, and the liquors were sent on by the plaintiff and received by the defendants. They were directed to " Bailey & Greeley," or to " B. & G., Nashville, N. H., to be left at the Nashua depot." The plaintiff had no license to sell liquors in New Hampshire, but had a license in New York.

Upon this evidence the defendants contended that the sale was made at Nashville, and that the price of the liquors could not be recovered. The plaintiff contended that the sale was made in New York. It was agreed that judgment should be rendered to the plaintiff for the price, or for the defendants, according to the opinion of the court.

*Atherton & Sawyer,* for the plaintiff.

The general rule of law is, that a contract is to be deem-

ed made, where it is perfected or made complete. Story, Confl. of Laws, 200, 317; *French* v. *Hall*, 9 N. H. Rep. 144.

The vendor's property and the domicil were both in New York. The delivery must have been in New York, and the delivery to the carrier transferred the property to the defendants, and the goods were at the defendants' risk in the transportation. Ch. on Cont. 376; *Baker* v. *Fuller*, 21 Pick. 321.

Something remained to be done by the vendor as between him and the defendants, before the delivery, that is, he was to reject or fulfil the order sent. The property did not vest in the defendants until the plaintiff so elected. Ch. on Cont. 375; *Davis* v. *Hill*, 3 N. H. Rep. 382.

The law of the owner's domicil is to determine the validity of the transfer or alienation of personal property. Supp. U. S. Dig. 710 § 1.

The validity of a contract for the sale of personal property depends upon the law of the State where the contract is made and the property delivered. *French* v. *Hall*, 9 N. H. Rep. 137; *Sessions* v. *Little*, 9 N. H. Rep. 271. The sale was in New York, and there the plaintiff had a license to sell.

Whatever was done in New Hampshire was a mere proposal to purchase. The case finds that the agent had no authority to sell. Where a proposal to purchase goods is made by letter sent to another State, and is there assented to, the contract of sale is made in that State. *McIntire* v. *Parks*, 3 Met. 207.

*Lull*, for the defendants.

GILCHRIST, C. J. The defendants caused an order to be sent to the plaintiff for the liquors, and they were accordingly forwarded from New York. The ordinary course of business is to deliver the articles to the carrier without a

special order to that effect. As soon as they were ordered the plaintiff would be authorized to send them on in the ordinary mode, by the common carrier. Before railroads were in operation, and before it was the custom to transport goods by them as a matter of course, perhaps it might have been necessary, in order to place the goods at the risk of the consignee, to direct them to be sent by a carrier.

In the case of *Dutton* v. *Solomonson*, 3 B. & P. 582, Lord *Alvanly* said, it appeared to him " to be a proposition as well settled as any in the law, that if a tradesman order goods to be sent by a carrier, though he does not name any particular carrier, the moment the goods are delivered to the carrier, it operates as a delivery to the purchaser; the whole property immediately vests in him; he alone can bring an action for any injury done to the goods; and if any accident happen to the goods, it is at his risk. The only exception to the purchaser's right over the goods is, that the vendor, in case of the former becoming insolvent, may stop them *in transitu.*"

Where goods are purchased in pursuance of orders, the delivery on board the ship is a delivery to the merchant who ordered them, the property is vested by that act, and he has no election to accept or reject them. *The Mary & Susan*, 1 Wheat. 25.

But if a shipper have general discretionary orders to ship goods, the shipment will remain at his own risk, unless at the time of shipment, by some overt unequivocal act, he designates or appropriates the shipment to his correspondent. *The Francis*, 2 Gall. 391.

That " unequivocal act " was performed here, for the articles were marked " Bailey & Greeley, Nashville, N. H."

In the ordinary course of mercantile transactions a delivery to a ship master is a delivery to the consignee. *The Francis*, 9 Cranch 183; *Gassett* v. *Godfrey*, 6 Foster's Rep. 415.

*Judgment for the plaintiff.*